IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE JAMES MADISON PROJECT, NOAH SHACHTMAN, and BETSY WOODRUFF, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Civil Action No. 17-1281 |

## DECLARATION OF PATRICK HOWARD

I, Patrick Howard, declare as follows:

1. I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists (GIS), the processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2. I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

1

3. The statements in this Declaration are based upon my personal knowledge, upon information acquired by me in the course of the performance of my duties, and upon my experience and knowledge of the internal operations of this office and agency.

4. The purpose of this Declaration is to set forth and to establish the validity of the challenged redactions and withholdings made by CBP in response to Plaintiff's FOIA request dated March 3, 2017 (the "Request").

A. **Plaintiff's Request and CBP's Search for Responsive Records**

5. By letter dated March 3, 2017 and submitted to CBP via its online portal, Plaintiff submitted the Request, which sought copies of CBP records, including cross-references, memorializing the following:

   a. Instructions or guidelines – including verbal instructions memorialized in writing – provided to CBP officials with respect to agency practice for presenting I-407 forms to individuals impacted by Executive Order 13769;

   b. Communications between CBP officials – including verbal communications memorializing (sic.) in writing – mentioning I-407 forms between January 27, 2017, and February 5, 2017;

   c. Any documentation tabulating or calculating the number of individuals who signed I-407 forms between January 27, 2017, and February 5, 2017;

   d. Copies of the actual signed I-407 forms that were signed between January 27, 2017 and February 5, 2017.

A copy of the Request is attached as **Exhibit A.**

In total, CBP released to the Plaintiff 237 pages, in whole or in part, withholding certain information pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). Additionally, CBP has withheld from the Plaintiff 15 pages in-full, pursuant to FOIA exemption (b)(5).

    a. On November 6, 2017, CBP released 171 pages of responsive records and withheld 22 pages in full pursuant to FOIA exemptions (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(E).

    b. On December 7, 2017, CBP released 59 pages of responsive records and applied FOIA exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

    c. The OIG's investigation into CBP's implementation of Executive Order 13769 was completed and released to the public in January 2018; therefore, CBP retracted its (b)(7)(A) redactions. On February 15, 2018, CBP released to the Plaintiff 7 pages of the 22 pages previously withheld in full pursuant to FOIA exemption (b)(7)(A).

    d. After review of its disclosures, CBP retracted some of its redactions pursuant to (b)(5) and (b)(7)(e). CBP also removed a hyperlink in the document metadata that had been redacted elsewhere pursuant to (b)(7)(e). On June 13, 2018, CBP re-released 13 previously released pages with the revised redactions.

**B.**   <u>**Exemption (b)(5)**</u>

6.     Exemption (b)(5) under the FOIA exempts from mandatory disclosure matters that are "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Exemption (b)(5) encompasses both statutory privileges and those commonly recognized by case law. The privileges incorporated into this exemption pertain to an agency's decision-making process (i.e.,

3

the deliberative process privilege), the attorney work-product privilege, and the attorney-client privilege.

7.  In this case, CBP invoked Exemption (b)(5) based upon deliberative process privilege in instances when records contained drafts of documents or pre-decisional communications. The purposes of the deliberative process privilege are to (1) encourage open, frank discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action. The privilege protects the decision-making processes of government agencies and the integrity of the deliberative process itself where the exposure of that process would result in harm. Specifically, the records redacted under Exemption (b)(5) in this case for deliberative reasons were draft documents and other communication records of deliberations by officials containing discussions of how to decide matters related to implementation of Executive Order 13769. As explained more fully in the attached Vaughn index, the pages where Exemption (b)(5) was applied for these reasons are EO FOIA CBP 0000001288, 1301 – 1306, 1366 – 1369, 1408, 1425, 1445, and 1455.

8.  CBP also invoked Exemption (b)(5) based upon the attorney work-product privilege and the attorney-client privilege in instances when records included documents and legal advice prepared by attorneys of CBP's Office of Chief Counsel. Such legal advice concerned guidance regarding the scope of the Executive Order 13769 and how it should be legally implemented, advice with regard to the various court actions filed in response to the Executive Order 13769, and matters regarding the OIG's investigation of CBP's implementation of Executive Order 13769. The attorney work-product doctrine protects documents and other

4

memoranda prepared by an attorney and others in contemplation of litigation. It seeks to protect the adversarial process by insulating the attorney's preparation from scrutiny, and extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated. The attorney-client privilege concerns confidential communications between an attorney and his or her client relating to a legal matter for which the client has sought professional advice, and encompasses opinions given by an attorney to his or her client based upon, and thus reflecting, those facts. As explained more fully in the attached Vaughn index, the pages where Exemption (b)(5) was applied for these reasons are EO FOIA CBP 0000001242-1245, 1283-1284, 1288, 1406 – 1407, 1423, 1443 and 1455.

C. **Exemption (b)(7)(E)**

9. Exemption (b)(7)(E) under the FOIA exempts from mandatory disclosure "records or information compiled for law enforcement purposes" that, if released, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." CBP is constrained in describing the techniques, procedures, and guidelines covered by Exemption (b)(7)(E), so as to avoid revealing information that is law enforcement sensitive as its dissemination would jeopardize the integrity of investigations and safety of the officers.

10. In this case, Exemption (b)(7)(E) has been applied to the email addresses used by CBP Officers to send and received sensitive information regarding CBP's law enforcement techniques and procedures regarding CBP's processing of travelers at the border. Disclosure of this information could compromise the sensitive law enforcement information about CBP's targeting, inspection and decision-making techniques used in the processing of international

5

travelers that is contained in these email messages and would enable potential violators to design strategies to circumvent the examination procedures developed by CBP. As explained more fully in the attached Vaughn index, the pages where Exemption (b)(7)(E) was applied for these reasons are EO FOIA CBP 0000001185, 1291, and 1456 - 1457.

11. CBP also invoked Exemption (b)(7)(E) based upon descriptions of law enforcement techniques and procedures regarding CBP's processing of travelers at the border, because release of information regarding CBP targeting, inspection and decision-making techniques used in the processing of international travelers would enable potential violators to design strategies to circumvent the examination procedures developed by CBP. As explained more fully in the attached Vaughn index, the pages where Exemption (b)(7)(E) was applied for these reasons are EO FOIA CBP 0000001288, and 1455.

12. The attached Vaughn Index describes each redaction in more detail, and together with this declaration, establishes that all material withheld by CBP is exempt form disclosure pursuant to the cited FOIA exemptions, or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.

I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 14 day of June 2018.

Patrick Howard
Branch Chief, FOIA Division
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security